FILED
United States Court of Appeals
Tenth Circuit

May 2, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ANTHONY J. AGUILAR,

    Petitioner - Appellant,

v.

CHELSEA WHITE;* ATTORNEY
GENERAL OF THE STATE OF NEW
MEXICO,

    Respondents - Appellees.

No. 23-2163
(D.C. No. 2:20-CV-00362-RB-LF)
(D.N.M.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY**
_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

Anthony J. Aguilar, presently in New Mexico state custody, appears pro se

seeking a certificate of appealability ("COA") to challenge the district court's dismissal

_____

    * Pursuant to Fed. R. App. P. 43(c)(2), Chelsea White replaces Dwayne
Santisteven as a respondent in this case.

    ** This order is not binding precedent except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule
32.1.

of his 28 U.S.C. § 2254 petition for a writ of habeas corpus.[1] Concluding

reasonable jurists could not debate the district court's dismissal of Mr. Aguilar's § 2254

petition, we deny a COA and dismiss this matter.

## I.      BACKGROUND

### A.      *State Court Conviction*

In New Mexico state court, a grand jury returned a sixteen-count indictment

against Mr. Aguilar stemming from a physical altercation that occurred at the home of his

former girlfriend in March 2015. Mr. Aguilar pleaded guilty to five of the counts,

including second-degree aggravated burglary, third-degree aggravated battery with a

deadly weapon, third-degree child abuse recklessly caused with no death or great bodily

harm, fourth-degree conspiracy to commit aggravated battery, and fourth-degree

aggravated assault with a deadly weapon. Per his plea agreement, Mr. Aguilar would

receive a sentence between zero and eighteen years.

Prior to accepting Mr. Aguilar's plea, at the change of plea hearing, the state trial

court explained that the agreement was for a sentence of between zero to eighteen years,

and that some of the charges were mandatory or optional "serious violent offense[s]" and

would or could result in substantial incarceration. ROA at 104. Mr. Aguilar testified that

he had reviewed the agreement with his attorney, it left nothing out, there were no other

---

[1] Mr. Aguilar is proceeding without the assistance of counsel. We therefore "construe his pleadings liberally." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). However, we "cannot take on the responsibility of serving as [his] attorney in constructing arguments." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

promises that might have enticed him to plead guilty, he was not under the influence of any substance and did not have any mental health disabilities that might affect his understanding, and he was satisfied with his attorney's explanation and advice on the case. The trial court accepted Mr. Aguilar's plea, finding that he had entered the agreement knowingly and voluntarily.

After Mr. Aguilar pleaded guilty, his attorney submitted a sentencing memorandum to the district court. The memorandum asserted that Mr. Aguilar was "seriously intoxicated and mentally impaired" when he committed the crime, that it was "an alcohol-induced event," that Mr. Aguilar had an excellent reputation in the community and was a first-time offender, and that Mr. Aguilar had been attending Alcoholics Anonymous meetings and a mental health and anger management class. *Id.* at 113, 115. In the memorandum, Mr. Aguilar further argued that he should receive no prison time and be released on probation or, if a sentence was required, that he first receive a sixty-day diagnostic evaluation. Mr. Aguilar and his attorney then "respectfully request[ed] that the Court sentence him to a term of five years' supervised probation with a Conditional Discharge and for the other relief as outlined above." *Id.* at 118.

At Mr. Aguilar's subsequent sentencing hearing, his attorney had multiple witnesses testify that Mr. Aguilar's crime was the result of alcohol and that he was trusted and beloved in the community. Mr. Aguilar's attorney also reiterated that Mr. Aguilar has "an issue with alcohol" which "impaired his reason [and] his ability to think clearly," and was "absolutely out-of-his-mind intoxicated." *Id.* at 175, 179. The court ultimately sentenced Mr. Aguilar to eighteen years' imprisonment with eight years

suspended for an actual imprisonment term of ten years, followed by five years of supervised probation and two years' parole.

Mr. Aguilar's attorney submitted a motion to reconsider the sentence, reiterating Mr. Aguilar's remorse and issues with alcohol. The motion also challenged the sentencing court's reliance on certain facts as inaccurate. Mr. Aguilar subsequently withdrew the motion.

### B.  State Post-Conviction Proceedings

Over the ensuing years, Mr. Aguilar filed multiple pro se habeas petitions in state district court and multiple petitions for writs of certiorari in the New Mexico Supreme Court. In his first post-conviction state habeas petition, Mr. Aguilar raised a claim for ineffective assistance of counsel, arguing among other things that his attorney made misrepresentations about the terms of the plea agreement and had him sign the agreement even though he did not understand it. The state district court dismissed the petition, finding Mr. Aguilar had "not stated a cognizable claim for relief. *Id.* at 274." Mr. Aguilar then filed for writ of certiorari in the New Mexico Supreme Court, arguing among other things that he received ineffective assistance of counsel because his attorney misled him into signing the plea agreement when Mr. Aguilar believed he would receive a sentence of zero to five years, along with the possibility of a conditional discharge. The New Mexico Supreme Court denied the petition.

Mr. Aguilar then filed a second habeas petition in state district court, reasserting his ineffective assistance of counsel claim on the basis that his attorney coerced, tricked, and misled him into taking the plea and raising several other arguments related to the plea

agreement. The state district court summarily dismissed the petition, finding Mr. Aguilar was not entitled to relief as a matter of law. Mr. Aguilar then filed a petition for a writ of certiorari in the New Mexico Supreme Court, again arguing that he had received ineffective assistance of counsel because his attorney forced him into a plea agreement by advising him to sign the agreement even though it did not reflect a sentence of zero to five years. The New Mexico Supreme Court denied the petition.

Mr. Aguilar also filed a pro se motion for reconsideration of his sentence, in which he asserted, among other things, that he pleaded guilty due to counsel's misdirection. The state district court denied Mr. Aguilar's motion to reconsider.

Mr. Aguilar then filed a motion to withdraw his plea based on ineffective assistance of counsel, arguing that he did not want to sign the plea agreement, but his attorney told him to sign it and informed him that she would fix it at sentencing. The district court construed the motion as a third state habeas petition, then entered an order denying it. Mr. Aguilar also filed a docketing statement in the New Mexico Court of Appeals, indicating he was appealing the district court's denial of his third habeas petition. Mr. Aguilar argued he had received ineffective assistance of counsel because his attorney misled him about his plea agreement, deceived him into hiring her because she was a white-collar criminal lawyer, and failed to adequately investigate his case or prepare for trial. The New Mexico Court of Appeals transferred the docketing statement to the New Mexico Supreme Court, and the New Mexico Supreme Court denied the petition. Mr. Aguilar filed a third petition for writ of certiorari in the New Mexico Supreme Court, again alleging his counsel forced him into a plea agreement and

5

erroneously advised him to accept the plea. The New Mexico Supreme Court denied the petition.[2]

### C.     Post-Conviction Federal Proceedings

In April 2020, Mr. Aguilar instituted this 28 U.S.C. § 2254 proceeding in the District of New Mexico. In his petition before the federal district court, Mr. Aguilar asserted he signed the plea deal only because his attorney misled him into believing that he would get no more than five years. He claimed he had previously rejected a plea deal for seven and a half years and made clear to his attorney that he would not accept a plea offer for more than five years. He further claimed that his attorney—unprepared for trial—presented him with the plea deal for a sentence of between zero and eighteen years, told him to "just sign it," and assured him that she "would fix it later" when Mr. Aguilar protested. ROA at 20.

Mr. Aguilar also argued that his attorney failed to raise a "Diminished Capacity" argument, had minimal contact with him, "did not present any argument for the court to show[] leniency at the [sentencing] hearing," was "unprofessional," gave "incompetent advi[c]e," "is a white collar lawyer and not a criminal defense lawyer and was unfamiliar with sentencing guidelines and State Laws," "offered no advice to the defendant at Plea Hearing[,] and conducted no Investigation to assist the defendant." *Id.* 20–23. Finally, Mr. Aguilar argued that the state district court "abused it[]s discretion in allowing the

---

[2] Mr. Aguilar also filed two additional petitions with the New Mexico Supreme Court. The record reflects that the New Mexico Supreme Court dismissed one and did not take action on the other.

defense attorney to withdraw as counsel," *id.* at 21, and that the prosecution should have overcome a rebuttable presumption of vindictiveness when it offered Mr. Aguilar a plea deal that was less favorable than a previously offered plea deal.

The federal district court identified six claims in Mr. Aguilar's petition. The court then concluded that not all of Mr. Aguilar's claims were exhausted and narrowed his petition to three properly exhausted claims:

1. [Mr. Aguilar's] attorney was ineffective because she did not know how to adequately represent him because she was not a criminal defense lawyer;

2. [Mr. Aguilar's] attorney was ineffective because she did not file proper motions in a timely manner and did not prepare an adequate plea; and

3. [Mr. Aguilar's] attorney was ineffective because she did not adequately represent him/failed to counsel him so that he did not understand the plea or knowingly agree to it.

ROA at 638–39, 641–42. The court found that Mr. Aguilar had failed to exhaust the claims that his counsel was ineffective because she did not pursue the defense discussed with him, did not provide an accounting of his funds upon termination of the attorney-client relationship, and failed to pursue or raise diminished responsibility and intoxication at his sentencing and to present his blood alcohol levels at the sentencing hearing. The court instructed Mr. Aguilar to clarify whether he intended to proceed with his habeas petition solely on his three exhausted claims. Mr. Aguilar filed a letter voluntarily dismissing his unexhausted claims and agreeing to proceed with the three claims identified by the district court.

The district court subsequently denied Mr. Aguilar's petition and denied a COA. Regarding Mr. Aguilar's first and second claims, the court held the claims were conclusory and thus did not warrant habeas relief. The court noted Mr. Aguilar made no allegations and provided no evidentiary support regarding his attorney's lack of familiarity with sentencing guidelines or state law, or regarding his attorney's alleged failure to file proper motions in a timely manner. Further, the district court noted that Mr. Aguilar failed to make any argument related to the state court's ruling on either of these arguments.

The district court also dismissed Mr. Aguilar's third claim because he could not demonstrate his attorney was ineffective or coerced him into signing the plea agreement. The court first held that Mr. Aguilar failed to carry his burden and demonstrate that the state court had not adjudicated this claim on the merits. Under the deferential standard of review required when a state court has adjudicated a claim on the merits, the district court then held Mr. Aguilar could not "establish that the state court's decisions were unreasonable in light of the evidence present in the state court record." ROA at 667. The court relied on the language in the plea agreement signed by Mr. Aguilar and Mr. Aguilar's testimony before the state court that he understood his plea and he had not been coerced, finding in light of the record before the state court that it was not unreasonable for the state court to accept his testimony that he was not coerced when he signed the plea agreement. In addition, the court noted that Mr. Aguilar had not directed it to any authority "show[ing] the decisions in the state court is contrary to or involved an

unreasonable application of clearly established Federal law." *Id.* The district court then denied Mr. Aguilar a COA.

Mr. Aguilar now seeks a COA in this court, raising four arguments. First, he asserts the state trial court erred in denying his counsel's motion for a continuance before Mr. Aguilar's trial. Second, he asserts the Government should have been required to overcome a "rebuttable [presumption of] vindictiveness" when it offered Mr. Aguilar a plea deal in excess of a previously offered plea deal, or the Government should have been required to "reinstate [its] original plea offer to the petitioner." Pet. at 7. Third, he argues both of his defense attorneys in state court provided ineffective assistance because they failed to investigate and request a diminished capacity defense. Finally, Mr. Aguilar broadly asserts that his counsel was ineffective because she did not offer advice at Mr. Aguilar's plea hearing or conduct an adequate investigation before he entered the plea deal.

## II.     LEGAL STANDARDS

### A.     *Standards Governing a § 2254 Proceeding and a Request for a COA*

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication . . . to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). When a petitioner includes in his habeas application a "claim that was adjudicated on the merits in State court proceedings," a federal court shall not grant relief on that claim unless the state court's adjudication of the claim:

9

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

Under § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court decision is an "unreasonable application" of Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

In considering a challenge to a state court decision under § 2254(d)(2), a state court's findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Thus, a petitioner challenging a state court's decision on this basis must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Sharp v. Rohling*, 793 F.3d 1216, 1219–20 (10th Cir. 2015) ("When reviewing a § 2254 habeas petition, we must presume the state supreme

court's factual findings are correct unless the petitioner presents clear and convincing evidence the findings are incorrect."). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Sharp*, 793 F.3d at 1228 (alteration in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "If 'reasonable minds reviewing the record might disagree about the finding in question,' we defer to the state court's determination." *Id.* (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)).

Before we may exercise jurisdiction over Mr. Aguilar's case, however, he must obtain a COA. *See* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."). Without a COA, we do not possess jurisdiction to review the denial of a petition for a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Charlton v. Franklin*, 503 F.3d 1112, 1114 (10th Cir. 2007) (quoting 28 U.S.C. § 2253(c)(2)). "This standard requires 'a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* (alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

11

### B.    *Ineffective Assistance of Counsel Claims*

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." *Missouri v. Frye*, 566 U.S. 134, 138 (2012). The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). "We review a challenge to a guilty plea based on a claim of ineffective assistance of counsel using the two-part test announced in [*Strickland*]." *United States v. Reed*, 39 F.4th 1285, 1293 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 745, 214 L. Ed. 2d 449 (2023) (quotation marks omitted); *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996) ("[T]he *Strickland* test also applies to challenges to guilty pleas based on ineffective assistance of counsel . . . ."). Under this test, the defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's performance was prejudicial. *Reed*, 39 F.4th at 1293.

### III.    DISCUSSION

We address each of Mr. Aguilar's exhausted ineffective assistance of counsel claims below and conclude that he is not entitled to a COA.[3] As an initial matter, we note

---

[3] "Under our firm waiver rule, failure to timely object forecloses appellate review unless the interests of justice require our review or unless a pro se litigant was not 'informed of the time period for objecting and the consequences of failing to object.'" *Hayes v. Norwood*, No. 23-6089, 2023 WL 8665005, at *2 (10th Cir. Dec. 15, 2023) (unpublished) (quoting *Johnson v. Reyna*, 57 F.4th 769, 778 (10th Cir. 2023)). Because Mr. Aguilar failed to specifically object to the Report and Recommendation issued by the magistrate judge in this case, he may have waived his right to appellate review of the district court's factual and legal determinations. *See Moore v. United States*, 950 F.2d

that three of Mr. Aguilar's four arguments in his application for a COA are irrelevant to his claims. Mr. Aguilar's arguments that the state trial court should not have denied his counsel's motion for a continuance and that the prosecution should have been required to overcome a "rebuttable [presumption of] vindictiveness" when it offered Mr. Aguilar a plea deal do not address the ineffective assistance of counsel claims in these § 2254 proceedings. Pet. for COA at 8. Similarly, Mr. Aguilar's argument that his counsel was ineffective because she failed to investigate and raise a diminished capacity defense relates to one of the unexhausted claims that Mr. Aguilar voluntarily dismissed before the district court, rather than any of his remaining claims. Thus, the only relevant argument Mr. Aguilar raises in his application for a COA is the broad assertion that his counsel was ineffective because she did not offer advice at Mr. Aguilar's plea hearing or conduct an adequate investigation before he entered the plea deal.

Turning to Mr. Aguilar's exhausted ineffective assistance of counsel claims, we first consider Mr. Aguilar's claim that his attorney was not a criminal defense attorney. Second, we consider his assertion she did not file proper motions in a timely manner and prepare an adequate plea. Finally, we consider his argument that his attorney did not adequately represent him or help him understand his plea. We deny a COA on the first

---

656, 659 (10th Cir. 1991). However, we have not decided whether the firm waiver rule operates as an independent basis for denying a COA. *See Glaser v. Archuleta*, 736 F. App'x 733, 736 (10th Cir. 2018) (unpublished); *United States v. Thyberg*, 722 F. App'x 847, 850 (10th Cir. 2018) (unpublished). We need not decide this question in this case, however, because we conclude even without the firm waiver rule as a bar that Mr. Aguilar is not entitled to a COA under the traditional framework.

two claims because they are conclusory and unsupported by the record. We deny a COA on the third claim because Mr. Aguilar has provided us with no evidence that the state court's adjudication of this claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law or in a decision that was based on an unreasonable determination of the facts in light of the evidence presented before the state court.

### A. Dismissal of Claim 1

The district court denied relief on Mr. Aguilar's first claim, that his attorney was not a criminal defense lawyer and was unfamiliar with sentencing guidelines and state laws. The court concluded that Mr. Aguilar had made only a conclusory statement and failed to provide any evidentiary support for this assertion. The district court noted that Mr. Aguilar failed to identify which sentencing guidelines or state laws she was unfamiliar with and how that prejudiced his defense. Reasonable jurists could not debate this conclusion. Thus, denial of a COA on this issue is appropriate.

First, in his application for a COA, Mr. Aguilar fails to address this ground for denying relief at all. He has therefore waived consideration of his first claim, providing sufficient basis to deny a COA on this issue. *See Davis v. McCollum*, 798 F.3d 1317, 1320 (10th Cir. 2015) ("[T]he district court rejected Davis's last two grounds of error as time-barred. Davis waived any potential challenge to that conclusion by failing to address it in his opening brief on appeal.").

Even if Mr. Aguilar had properly challenged the district court's reasoning on this point, we would deny Mr. Aguilar a COA. "We have repeatedly held that conclusory

14

allegations are insufficient to warrant habeas relief for ineffective assistance of counsel." *Quintana v. Mulheron*, 788 F. App'x 604, 609 (10th Cir. 2019) (unpublished); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (explaining in the § 2255 context that "we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

As the district court properly pointed out, Mr. Aguilar does not provide any evidence to support his claim that his attorney was ineffective. To meet his burden under *Strickland*, Mr. Aguilar must show this objective deficiency based on an evaluation of his attorney's actual performance, not her experience. *See United States v. Cronic*, 466 U.S. 648, 665 (1984) ("The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation."). Thus, Mr. Aguilar's allegations that his attorney practices as a white-collar lawyer, rather than a criminal defense lawyer, do not alone render her assistance ineffective. Additionally, Mr. Aguilar makes no allegations and provides no evidence to support the assertion that his counsel was unfamiliar with the sentencing guidelines or state law. He makes an unsupported allegation in his habeas petition that his attorney advised him to accept the plea

agreement "based on a mistaken understanding of the law," but provides no support for this allegation.[4] ROA at 23.

For the foregoing reasons, reasonable jurists could not debate whether the district court should have dismissed Mr. Aguilar's first exhausted claim. We therefore deny a COA on this issue.

### B.       *Dismissal of Claim 2*

The district court also denied relief on Mr. Aguilar's second claim, that his attorney was ineffective because she did not file proper motions in a timely manner, because the claim was too vague and conclusory to warrant habeas relief.[5] The court noted that Mr. Aguilar did not identify any motions he believes his counsel should have filed or explain how any such alleged omission prejudiced his defense. As with his first claim, Mr. Aguilar has not demonstrated that reasonable jurists could debate the district court's conclusion.

---

[4] Specifically, Mr. Aguilar appears to suggest that his counsel should have informed him that the prosecution would be required to overcome a presumption of vindictiveness when it offered him a less favorable plea deal after he rejected the prosecution's initial plea offer. But Mr. Aguilar makes no argument to support his allegation that such a presumption would attach to the second plea offer. *See United States v. Carter*, 130 F.3d 1432, 1443 (10th Cir. 1997) ("To establish a claim of prosecutorial vindictiveness, the defendant must prove either (1) actual vindictiveness, or (2) a reasonable likelihood of vindictiveness which then raises a presumption of vindictiveness." (internal quotation marks omitted)).

[5] The district court addressed Mr. Aguilar's assertion under this claim that his counsel did not prepare an adequate plea in conjunction with his third claim: that his attorney was ineffective because she did not adequately represent him and failed to counsel him so that he did not understand the plea or knowingly agree to it. We take the same approach here. *See* discussion *supra* Section II.C.

In his application for a COA, Mr. Aguilar again does not address the district court's ground for denying relief at all and has therefore waived consideration of this claim. *See Davis*, 798 F.3d at 1320. Even if we were to consider this claim, however, we would deny Mr. Aguilar a COA. As the district court pointed out, in his habeas petition, Mr. Aguilar does not identify any motions which his attorney failed to file in a proper and timely manner, nor does he explain how any such alleged failure prejudiced him. For example, while Mr. Aguilar asserts his attorney filed a motion for a continuance before his trial, his sole allegation regarding that motion relates to the state court's allegedly improper denial of the motion. But Mr. Aguilar provides no evidence and makes no allegations regarding *his attorney's* failure to submit proper and timely motions. In his application for a COA, Mr. Aguilar similarly does not identify any argument he made or evidence he provided to the district court in support of his claim that his attorney did not file proper and timely motions, instead reiterating his arguments before the district court.

Reasonable jurists could not debate whether Mr. Aguilar's second exhausted claim should be dismissed. We therefore deny a COA on this issue.

### C.     *Dismissal of Claim 3*

Finally, the district court addressed Mr. Aguilar's argument that his counsel was ineffective because she did not adequately represent him and coerced him into signing the plea agreement.[6] The court first found the state courts had adjudicated this claim on the

---

[6] As has been noted, the district court considered, and we now consider, Mr. Aguilar's argument under his second claim that his counsel provided ineffective assistance in preparing his plea agreement in conjunction with this third claim.

merits, then concluded Mr. Aguilar's claim did not warrant relief under either prong of § 2254(d). A reasonable jurist could not debate this conclusion.

In his application for a COA, Mr. Aguilar again does not identify any alleged errors made by the district court in dismissing this claim. Instead, he generally reasserts that his attorney provided ineffective assistance because she did not offer advice at Mr. Aguilar's plea hearing or conduct an adequate investigation before he entered the plea deal. Mr. Aguilar also reiterates that he was told he would be sentenced to five or fewer years of imprisonment if he pleaded guilty.

### 1.    Adjudication on the Merits

The district court first found that the state courts had adjudicated Mr. Aguilar's claim on the merits, thus warranting deference to their decisions. Mr. Aguilar raises no argument on this point in his habeas petition or in his application for a COA.

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication . . . to the contrary." *Id.* at 99. Importantly, "[t]he petitioner bears the burden of showing a claim was not adjudicated on the merits in state court." *Simpson v. Carpenter*, 912 F.3d 542, 583 (10th Cir. 2018).

The New Mexico Supreme Court and state trial courts summarily denied all of Mr. Aguilar's petitions. In each of those petitions, Mr. Aguilar raised his claim that he

18

agreed to the plea deal due to the ineffective assistance of counsel. We must therefore presume, subject to rebuttal, that Mr. Aguilar's third claim was adjudicated on the merits. *See Johnson v. Williams*, 568 U.S. 289, 293 (2013) ("[W]hen a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits."). Mr. Aguilar made no effort to challenge this presumption. Thus, we defer to the state-court decisions.

### 2.    Entitlement to Relief Under § 2254(d)

The district court dismissed Mr. Aguilar's third claim, concluding that neither provision of § 2254(d) warranted relief. A reasonable jurist could not debate the district court's resolution of this claim.

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, we owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). Thus, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was *no reasonable basis* for the state court to deny relief [on the merits]." *Harrington*, 562 U.S. at 98 (emphasis added).

First, to be entitled to relief under § 2254(d)(1), the state court's adjudication of this claim must have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The district court correctly noted that Mr. Aguilar

19

cited to no such authority in his habeas petition. Similarly, in his application for a COA, Mr. Aguilar again provides no Supreme Court authority to support an argument that the state-court decisions were contrary to or involved the unreasonable application of federal law. Although he cites to several decisions issued by the courts of appeals,[7] our inquiry under § 2254(d)(1) "begins and ends with 'the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Anderson v. Mullin*, 327 F.3d 1148, 1153 (10th Cir. 2003) (alteration in original) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and cannot form the basis for habeas

---

[7] Review of the cases upon which Mr. Aguilar relies also demonstrates that they can be differentiated from the facts of his case. For example, Mr. Aguilar relies on *Moore v. Bryant*, a case in which the Seventh Circuit affirmed the district court's grant of habeas relief where the defendant submitted an affidavit stating the defendant's attorney had misinformed him regarding an impending change to state law. 348 F.3d 238, 240 (7th Cir. 2003). As a result of that misinformation, the attorney informed the defendant that he would likely serve twenty to twenty-seven years if convicted at trial, but ten years if he pleaded guilty. *Id.* at 240. The defendant was actually facing the choice between a ten-year sentence and a twelve-and-a-half- to fifteen-year sentence. *Id.* The defense attorney testified about his advice to the defendant at a hearing before the state court, and the Seventh Circuit noted that the attorney's testimony was consistent with the defendant's affidavit. *Id.* at 240–41. Other cases upon which Mr. Aguilar relies similarly involve dissimilar factual patterns, *e.g.*, *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 258–59 (6th Cir. 1991) (granting habeas relief where the trial judge and defense attorneys incorrectly informed the defendant that his maximum period of incarceration would be only fifteen years, when the actual maximum was seventy-five years), or otherwise do not demonstrate that the state court's decision in Mr. Aguilar's case was contrary to or an unreasonable application of federal law, *e.g.*, *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970) ("An erroneous sentence estimate by defense counsel does not render a plea involuntary").

relief under § 2254(d)(1). *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (quoting 28 U.S.C. § 2254(d)(1)).

Second, to be entitled to relief under § 2254(d)(2), the state court proceeding must have "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." We find nothing in the record before the state courts to suggest that the courts' findings were unreasonable in light of the evidence before them. To the contrary, the record supports a finding that Mr. Aguilar had not been coerced into signing the plea agreement and that he was satisfied with his attorney's participation in his obtaining a plea agreement. Mr. Aguilar signed an agreement that stated "[t]here are no agreements as to sentence. 0-18 years." ROA at 92. He further affirmed in the agreement, "I have read and I understand this agreement" and "I have discussed the case and my constitutional rights with my lawyer." *Id.* at 94. Mr. Aguilar also affirmed he understood that, in pleading guilty, he gave up certain constitutional rights.

In addition, at Mr. Aguilar's change of plea hearing, Mr. Aguilar testified under oath about his plea, confirming that he had reviewed the document with his attorney and that she had answered all his questions regarding what he was pleading to. The court then described the plea agreement, noting among other things that "it looks like there is an agreement to your sentence of being zero to 18 years." *Id.* at 102. The court asked Mr. Aguilar "[i]s that your understanding of this agreement?" to which Mr. Aguilar responded "[y]es." *Id.* at 103. The court then asked, "[i]s there anything that you feel I've left out," to which Mr. Aguilar responded "[n]o." *Id.* After summarizing the penalties

associated with each of the charges to which Mr. Aguilar was pleading guilty, the court asked, "[h]as anyone threatened you, coerced you or otherwise forced you to accept this agreement, Mr. Aguilar?" to which Mr. Aguilar responded "[n]o." *Id.* at 104. The court further asked, "[h]ave there been any promises, other than what I just listed to you to get you to plead guilty to these charges?" to which Mr. Aguilar again responded "[n]o." *Id.* The court then explained the constitutional rights that Mr. Aguilar was giving up in signing the plea agreement, and Mr. Aguilar confirmed that he was knowingly and willingly giving up those rights. The court then asked whether Mr. Aguilar was "satisfied with [his] attorney's explanation and advice on this case," and Mr. Aguilar affirmed that he was. *Id.* at 107. Finally, the court asked Mr. Aguilar, "[d]o you have any questions, either for your attorney or for the Court before we go forward?" and Mr. Aguilar responded "[n]o." *Id.*

Despite these sworn statements in open court, Mr. Aguilar argued in his state habeas petitions that his attorney represented Mr. Aguilar would receive a five-year sentence and that she would amend the plea agreement after Mr. Aguilar signed it. In support of this argument, Mr. Aguilar attached two letters to his second and third state habeas petitions, and provided them as exhibits to his habeas petition before the federal district court. In the first, an associate of Mr. Aguilar's asserts that he accompanied Mr. Aguilar to a meeting with his attorney and during that meeting, Mr. Aguilar's attorney told him she would change the plea agreement after he signed it. In the second letter, another of Mr. Aguilar's associates represents that Mr. Aguilar signed his plea

agreement under much distress. Both letters post-date Mr. Aguilar's first state habeas petition.

Based on this record, which reflects that Mr. Aguilar was repeatedly informed both in the plea agreement and during his change of plea hearing that he could be sentenced for up to eighteen years, the state courts consistently rejected Mr. Aguilar's arguments that his counsel had misinformed him about the number of years to which he could be sentenced and thus provided ineffective assistance. In light of the record, and particularly Mr. Aguilar's declarations in open court that he understood his plea agreement, had not been threatened or coerced into signing it, and had not been made any promises beyond those in the plea agreement, we cannot conclude the state court's finding was unreasonable.

A state court's finding on this point is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Sharp*, 793 F.3d at 1228 (quoting *Wood*, 558 U.S. at 301). And to the extent reasonable minds might disagree upon reviewing the record, we must defer to the state court's determination. *Id.* Reasonable jurists could not debate whether Mr. Aguilar's third exhausted claim should be dismissed. We therefore deny a COA on this issue.

## IV.    CONCLUSION

For the foregoing reasons we DENY Mr. Aguilar's request for a COA and

DISMISS this matter.

Entered for the Court

Carolyn B. McHugh
Circuit Judge